[Civ. No. 10086. First Appellate District, Division Two.—March 2, 1936.]

In the Matter of the Estate of ETTA F. WEVER, Deceased. HELEN HODGKINS et al., Appellants, v. AMERICAN TRUST COMPANY (a Corporation) et al., Respondents.

Pierce & Sherwin, Paul F. Fratessa and George C. Hadley for Appellants.

Louis W. Bennett and Stanley D. Whitney for Respondents.

NOURSE, P. J.—On the denial of a petition for ratable partial distribution, the probate court determined the persons to whom, and the manner in which, distribution should be made. The appellants are the granddaughter and the brother, respectively, of the testatrix. They state three questions are involved in the appeal, but concede that if the question of the abatement of the legacies is determined favorably to them, the other points may be deemed waived. We confine our examination to this question as the order must be reversed on that ground.

The question involves an interpretation of sections 750, 751 and 752 of the Probate Code. General legacies under the will aggregated $59,000, of which sum $25,000 was bequeathed to kindred of the testatrix and the remainder to persons not related. The will was executed in January, 1929, and at that time testatrix had property more than sufficient to meet all bequests. At the time of her death, values had decreased so that little more than $28,000 was on hand for distribution. The appellants contended on the hearing of the petition for distribution that the general legacies to persons not related to the testatrix should first abate under the provisions of section 752 of the Probate Code. The respondents

took the position that this section gives preference to spouse and kindred in the matter of debts alone, and in support of their position cite and rely on *Estate of Apple,* 66 Cal. 432 [6 Pac. 7], as the only authority in this state covering the subject.

The Apple Estate involved a case where the testator died a resident of Nevada leaving several demonstrative legacies covering bonds which were not in this state at the time of his death. Administration was taken on other personal property located here, and the probate court assumed to distribute the bonds as well. Since the bonds were insufficient to meet the legacies in full, distribution was made on the theory that the legacies to the kindred were to be preferred over those to others. The Supreme Court stated that the question involved on the appeal was whether the law of the domicile controlled, it being conceded that the law of Nevada made no distinction between legacies to kindred and legacies to those not related. All the justices agreed that the law of Nevada controlled and that the abatement should be applied ratably to all legacies. A majority of the court then stated that, even if the law of California should govern, the same result would follow. The discussion on this subject is what respondents rely upon as controlling here. The appellants correctly point out that that part of the opinion is *obiter dictum* and two of the justices concurring in the first part of the opinion expressed the same view in respect to the portion relating to the law of this state.

But an opinion is not to be disregarded wholly because it is *obiter dictum.* The real criticism goes to those portions of an opinion which assume to determine matters outside the issues and hence not fully discussed and considered. That criticism is not applicable to the portion of the Apple opinion which discusses the California statutes. But even so, the opinion is not controlling at this time because of the radical change in the statutes involved. It will be noted that the conclusion was based almost exclusively on the *position* of the code sections as they stood at that time. Emphasis is laid on the fact that, as originally enacted, section 1359 of the Civil Code related to the order of resort to property of the estate for payment of debts, that section 1360 related to the order of resort to legacies for the payment of debts and that section 1361, which gave a preference to legacies to spouse or kindred,

immediately followed these sections. It was then said that because of this arrangement of the sections, it appeared.to be the intention of the legislature to prefer. such legacies as to payment of *debts* alone, and that the following section 1362 relating to abatement was complete in itself and had no relation to the preference given in the preceding section. It should be noted here that the entire portion of the opinion relating to this subject is confined to the question of *debts*. Nothing is said as to the liability for family allowance or expenses of administration. Section 1361 was given the subtitle ''Legacies, how charged with debts,'' and the opinion expressly holds and emphasizes that the preference to spouse and kindred related to *debts* only. Yet section 1359, as amended in 1874, provided that the family allowance and expenses of administration must be paid ''before any debts are paid''. We can see no reason why the preference given by section 1361 should not apply to these matters as well as to the debts of the estate, except that the statute does not say so, and if we added them to the section, that would be judicial legislation.

As the arrangement of the code sections was relied on in the interpretation given in the Apple opinion, their rearrangement in the Probate Code, has a significant bearing upon the interpretation of the sections as they now stand. The Probate Code is a revision and restatement of the entire subject matter, and we must look to the provisions of that code as written. The office of the court ''is simply to ascertain and declare what is in terms or in substance contained (in a statute), not to insert what has been omitted, or to omit what has been inserted''. (Sec. 1858, Code Civ. Proc.)

Section 750 of the Probate Code relates to the order of resort to estate assets for payment of debts, expenses of administration, and family allowance, all of which items are put on the same basis in so far as liability for payment is concerned. This section embraces provisions formerly found in sections 1560, 1562 and 1563 of the Code of Civil Procedure, and in section 1359 of the Civil Code. The final clause of the new section reads, ''and thereafter *all other property* devised and bequeathed is liable for the same, in proportion to the value or amount of the several devises and legacies, but specific devises and legacies are exempt from such liability if it ap-

pears to the court necessary to carry into effect the intention of the testator, and there is other sufficient estate".

Section 751 of the new code embraces some of the provisions of section 1360 of the Civil Code with little change in language, but with the omission of the fourth subdivision of the old section. Section 752 is a complete new draft embracing provisions of sections 1361 and 1362 of the Civil Code. Section 751 has been given the sub-title, "Order of resort for payment of legacies"; section 752 carries the sub-title, "Order of abatement of legacies".

A careful reading of these sections discloses a manifest intention of the legislature to make them all-inclusive of the subjects therein contained. Section 750 makes all property of the estate primarily liable for payment of the debts, expenses of administration, and family allowance, and declares the order in which the property shall be resorted to for those purposes. The only exception is property covered by specific devises and legacies under certain circumstances. Section 1359 of the Civil Code, from which much of the language of the new section was taken, contained the proviso, "except as otherwise specially provided", and this gave rise to the interpretation in the Apple case that section 1361 "otherwise provided". Section 1563 of the Code of Civil Procedure read, "The estate, real and personal, given by will . . . is liable for the debts . . . " The new section reads, "*all* other property devised and bequeathed is liable for the same". In this section the word "chargeable" is not used, but the words "liable" and "liability" are employed, and, as we have said, there is no exception made or saved as to the liability imposed on *all* the property of the estate except that of specific devises and legacies.

Coming to section 751 of the Probate Code, we find the notable exception reading, "except as otherwise provided in this code". Here is a section which, with this exception, covers all the provisions relating to the resort to property "for the *payment* of legacies". This is followed immediately by section 752 which reads, "Unless a different intention is expressed in the will, abatement takes place in any class only as between legacies of that class, and legacies to a spouse or to kindred are chargeable only after legacies to persons not related to the testator." Here the word "chargeable" relates directly to the word "payment" found in the preceding sec-

tion, and no inconsistency arises from reading that clause as an exception to the previous section on order of payment of legacies. On the other hand, there is nothing in section 752 which discloses any intention to skip over section 751 and back to 750 so as to create another exception in that section in addition to the only one which is there written. If it were not the intention of the legislature to extend this preference in the payment of legacies under section 751, there is no reason why it should have been made to follow that section and no reason why it should have been incorporated in a section relating to abatement and not in the section relating to payment of debts. If this is not the proper construction, it is difficult to say what other construction could be proper—whether the section should be read as a general exception to all liability for debts, expenses of administration and family allowance, mentioned in section 750, or whether it is an exception applicable to the liability for *debts* alone as held in the Apple case.

Reading the sections as a whole, the reasonable interpretation is this: Section 750 makes all property of the estate liable for debts, expenses of administration, and family allowance, with the single exception of property covered by specific devises and legacies under certain conditions. The order in which the property is to be resorted to for that purpose is clearly defined, and no devise or legacy is exempt except as noted. Section 751 covers an entirely separate and unrelated matter—the order of resort to property for payment of *legacies*. It includes and relates to all property, except as otherwise provided. Section 161 of the Probate Code contains one of these exceptions—the case where a specific legacy fails. In such a case, resort cannot be had to other property of the estate. Section 752 contains another provision contrary to the general directions of section 751.

The reasonable interpretation of this section is that abatement takes place equally between all legatees of a certain class and cannot apply to one only of one class and one of another. The "class" mentioned in this section is any one of the five kinds of legacies stated and defined "according to their nature" in section 161 of the Probate Code. Thus, if there are three demonstrative legatees and three annuitants, abatement cannot be charged to one or more of those in each class and not to all of that class. But the last clause of this

section picks up a group of legacies not theretofore mentioned in the code; it does not refer to the "class" or nature of legacies defined in section 161, but refers to the character of the *legatee*. It clearly prefers, over the general provisions of the section as to abatement in the payment of all legacies, the spouse and kindred in whatever class their legacies may fall. The first portion of the section is in full harmony with section 751 and, reading these together, we have the manner in which the property is to be resorted to in the payment of legacies and the flat declaration that, if the property is insufficient, abatement shall take place equally in each class of legacies. The last clause of section 752 is an exception to the previous section coming from the language "except as otherwise provided in this code". Where this section declares the order in which property must be resorted to in the payment of legacies, the last clause of section 752 declares that the property bequeathed to spouse and kindred shall be "chargeable" with the *payment* of these legacies only after legacies to persons not related are so charged. The obvious intention of the sections is that, "unless a different intention is expressed in the will", legacies to spouse and kindred shall be preferred over other legacies of the same class when the property is insufficient to pay all such legacies in full, but that all property of the estate shall be liable for the debts, expenses of administration and family allowance, with the single exception of the specific legacies and devises mentioned in section 750. If any other or different purpose was intended, the legislature has failed to use any language in these three sections of the code which would disclose such purpose, but we purposely refrain from deciding the related question of the apportionment as between the various legatees of the liability for debts, expenses and family allowances because the parties have stipulated that such question is not involved in this proceeding. We have held that all property of the estate is made primarily liable for these charges because it was necessary to so hold in order to arrive at the proper interpretation of sections 751 and 752. But, whether the latter section applies to section 750 as well as to 751, or whether spouse and kindred should contribute proportionally to such charges as under section 753, are questions which must be determined only when the issues are properly raised for decision.

 The appellant Fowler died after the appeal was perfected, and a motion to dismiss the appeal as to him was heard and submitted with the case on its merits. This motion should be denied because the death of an appellant does not in itself justify a dismissal of the appeal. Ordinarily, we require a substitution of the administrator. In this matter, Fowler was merely the beneficiary under a trust contained in the will which would give him a monthly allowance until the day of his death. The trust has never become operative because no distribution to the trustees has been made. His estate may have some litigable interest, but that can be determined in the probate court, and no one is prejudiced by the failure to substitute here.

The motion to dismiss the appeal is denied. The order is reversed.

Sturtevant, J., concurred.

Spence, J., concurred in the judgment.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 30, 1936.