31 Cal.3d 703 (1982)
646 P.2d 196
183 Cal. Rptr. 525
Estate of EDWARD H. JENANYAN, Deceased.
SAMUEL L. HOLMES, as Administrator With the Will Annexed, etc., Petitioner and Respondent,
v.
SHARON WICK, Claimant and Appellant; ANN JENANYAN et al., Claimants and Respondents.
Docket No. S.F. 24381.
Supreme Court of California.
June 24, 1982.
*705 COUNSEL
Finch, Sauers, Player & Bell, Richard G. Bell and Marilyn N. Taketa for Claimant and Appellant.
No appearance for Petitioner and Respondent.
David R. Owens for Claimant and Respondent Jenanyan.
No appearance for other Claimants and Respondents.
OPINION
BIRD, C.J.
This probate case raises interrelated issues arising from a trial court order that a specific devise of real property abate proportionally with general monetary bequests. There are two specific issues. First, did appellant have adequate notice that the court might order *706 abatement of her devise, where the petition pending before the court conceded that the real property would not abate? Second, was the trial court correct in ordering abatement of the real property devise?

I.
Edward Jenanyan died on August 9, 1976, leaving a will dated February 3, 1975, and a holographic codicil executed the following day. The will and codicil were admitted to probate in Contra Costa County in September of 1976.
By the terms of his will, Jenanyan left his personal effects and furniture to his second wife, Ann Jenanyan. He made numerous cash bequests to friends and relatives, totalling $425,000. He made only one specific devise of real property, to appellant, Sharon Wick.[1] In addition, he left $100,000 to be distributed to a list of named charities.
The day after he executed his will, decedent wrote a holographic codicil stating that if there were insufficient funds in his estate to pay all bequests in full, the charitable bequests should be reduced by the necessary amount, "so that all other bequests can be paid in full."
In January of 1978, the administrator of the estate petitioned the court for instructions concerning abatement.[2] He asserted that the estate was valued at approximately $352,000, while noncharitable bequests totalled $420,000. He sought a decision by the court as to whether the statutory rule that gifts to strangers abate before gifts to kindred should be applied in this case. (Prob. Code, § 752.)[3] The court, however, declined to rule on the issue at that time.
In September of 1979, the administrator again requested instructions from the trial court. He filed a petition asking for a determination of the proper abatement procedure. The petition also requested permission to make a preliminary distribution to appellant of her interest in the real property. The petition stated that such distribution would be "in the best interests of the estate and those interested therein...."
*707 Written objections to the administrator's petition were filed by a representative of the estate of Jenanyan's first wife. While arguing that the statutory kindred preference should not apply, the objector acknowledged that the real property was "being held solely for transfer to" appellant, and, under the provisions of section 752, should not abate.
Appellant received notice of the hearing on the administrator's petition but neither she nor her attorney attended. The hearing was held on October 5, 1979, with only the representatives of the administrator and of the estate of Jenanyan's first wife in attendance. At the hearing, the court ruled that the charitable bequests would abate completely, and the remaining bequests would abate ratably, with no preference for kindred. Appellant asserts without contradiction that her devise of real property was not discussed at the hearing.[4]
One week after this hearing, on October 12, 1979, counsel for the estate administrator wrote to the court, noting that there had been no discussion of the request for immediate distribution of the real property to appellant. The letter asked, "In view of the Court's determination that the intent of the testator as expressed in the will was that all bequests would be paid in full or as near thereto as possible, that is, all abated proportionately, am I correct in assuming that the Court's order was intended to extend to the bequest of the real property devised to Sharon Wicks [sic], and that such bequest also abates proportionately[?]" The letter indicates that a copy was sent to appellant's attorney.
The trial judge replied in a letter dated October 18, 1979, stating that Sharon Wick "is not a charity, and should be paid equally with the other specific bequests other than charitable." The administrator interpreted this as a decision that the specific devise to appellant should abate proportionally with the general bequests. There is no indication that appellant or her attorney received a copy of this letter.
On October 23, 1979, the trial judge issued an order stating that the bequests to charities should abate in full, and that "all other bequests abate proportionately." On that same day, counsel for appellant wrote to the court, noting receipt of a copy of the administrator's letter inquiring about abatement of the real property devise. The letter stated *708 appellant's opposition to abatement, cited authority for her position, and offered to supply additional argument or authorities. The trial court responded in a letter dated October 26, 1979, stating that the matter had been calendared, duly noticed, and heard on October 5, 1979, and that the court had already ruled on it, in an order dated October 23, 1979.
This appeal followed.

II.
Appellant raises two issues on appeal from the trial court order that the gift of real property abate ratably with the general bequests. First, she claims that the order is void because she did not receive notice that abatement of the real property was at issue before the trial court. Second, she asserts that on the facts of this case the trial court erred in ordering that the real property abate ratably.
(1) The probate of an estate consists of a series of procedures, from the initial appointment of an executor or administrator to the final distribution of the estate. At each stage, the Probate Code specifies what notice must be given to interested parties. (See 1 Cal. Decedent Estate Administration (Cont.Ed.Bar 1971) Notice and Procedure, § 20.4, pp. 766-778 [hereafter Decedent Estate Admin.].) The notice requirements are jurisdictional, so failure to comply with the statutory requirements may render the resulting proceedings void. (7 Witkin, Summary of Cal. Law (8th ed. 1974) Wills and Probate, § 276, p. 5772; see also Decedent Estate Admin., supra, Jurisdiction and Venue, § 5.14, p. 191; Estate of Poder (1969) 274 Cal. App.2d 786, 789 [79 Cal. Rptr. 484].) Thus, a claim of lack of jurisdiction is a corollary to a claim of insufficient notice. (2) The trial court is without jurisdiction to make an order which has not been properly noticed, unless the right to notice has been waived.
Pursuant to section 1202, appellant filed a request for special notice in this case. She thereby became entitled to notice of all petitions filed in the case. The form for such notice is set out by section 1200.1. It must include the name of the petitioner, a description of the nature of the petition, and a reference to the petition for further details. The notice sent pursuant to this statute, therefore, is limited to notice that a *709 particular petition will be heard by the court at a certain time and place.
The order challenged in this appeal was issued in response to a petition by the administrator for, inter alia, instructions regarding abatement and authorization for a preliminary distribution of the estate. In the body of the petition, the administrator explained that even if all charitable bequests were abated in full, as per the instructions in the holographic codicil to the will, there would still be insufficient funds to pay the rest of the bequests. Noting that the will was silent as to this possibility, the petition asked the court to determine the proper application of the abatement provisions of the Probate Code (see § 752).
In the immediately following paragraph of the petition, the administrator requested permission to make a preliminary distribution to appellant of the interest in real property bequeathed to her by the will. The petition stated that this distribution could be made "without loss to creditors or injury to the estate or any person interested therein."
Appellant concedes that she received notice of this petition and of the date and place of the hearing on it. She asserts, however, that this notice was insufficient to alert her to the possibility that the court might order abatement of her gift of real property. She points in particular to the fact that it is clear from the face of the petition that the administrator did not intend to include the real property in his request for abatement instructions. To the contrary, he made a separate request for authority to distribute the real property immediately, thus explicitly indicating that the real property would not abate.
Underlying appellant's claim of insufficient notice are two assertions. First, she presents the general claim that a trial court order that goes beyond the issues raised by the petition thereby exceeds the notice given the parties and must fail, absent waiver. Second, she claims that the court order in this case exceeded the bounds of the petition then before the court.
Her first point has merit. (3) Prior California decisions hold that a court order can be challenged for lack of notice where the order goes beyond the issues framed by the petition. In Estate of Hubbell (1932) 216 Cal. 574 [15 P.2d 503], this court held that a petition for distribution of an estate did not give notice that the issue of interest on legacies would be decided. "The averments of the petition for distribution were *710 not such as to definitely inform the appellants that they were to be denied interest on their legacies. The petition merely requested that the estate be distributed without indicating the persons to whom or the proportions in which it was to be distributed." (Id., at p. 578.) The appellants in Hubbell had no notice that their right to interest would be adjudicated at a hearing on a petition for distribution.
In a similar case, the Court of Appeal held in Estate of Kearns (1954) 129 Cal. App.2d 832 [278 P.2d 85] that notice of a petition for partial distribution did not give notice that the entire will would be interpreted at the hearing on the petition. The petition "asked only for distribution of this one parcel of property and appellants were not on notice that [the petition] was asking for a construction of the will in regard to the total assets of the estate." (Id., at p. 839; see also Estate of Olson (1962) 200 Cal. App.2d 234, 237-238 [19 Cal. Rptr. 307] [petition for probate of will that referred to only one of three wills was insufficient to bring the unmentioned wills before the court]; Estate of Wakefield (1968) 258 Cal. App.2d 274, 280 [65 Cal. Rptr. 664] [inadequate notice of hearing issued by clerk cured by fact that all parties received copy of petition setting forth the exact nature of the relief sought].)
(4) These cases stand for the proposition that the contents of a probate petition must adequately inform interested parties of the issues that may be decided at a probate proceeding. Such a conclusion is consistent with the cases holding that notice of probate proceedings is a jurisdictional requirement. (See, e.g., Estate of Poder, supra, 274 Cal. App.2d at p. 789; Lilienkamp v. Superior Court (1939) 14 Cal.2d 293, 298 [93 P.2d 1008] ["Jurisdiction is established when the appropriate petition has been filed and the notice required by the statute has been given."].) Where notice is limited to the information that a particular petition will be heard by the court at a certain place and time, the court is without jurisdiction to decide issues beyond the scope of that petition unless all interested parties are before the court or otherwise waive their right to notice. (See, e.g., Estate of Poder, supra, 274 Cal. App.2d at pp. 791-792; Decedent Estate Admin., supra, § 20.2, p. 765, and § 20.26, p. 798 [right to notice can be waived].)
(5) Appellant next contends that the notice in this case was not sufficient to alert her to the possibility that the court would consider abatement of her interest in the real property. This contention also has merit. The petition clearly excepted the specific devise of real property *711 from its request for abatement instructions. Indeed, the only debate about abatement up to that point in the probate administration concerned the application of the statutory kindred preference. Appellant had no reason to suspect that the abatement of her devise would be at issue at the hearing on this petition.
The facts of this case demonstrate the importance of adequate notice. The issue of abatement of the real property devise apparently was not discussed at the hearing on the administrator's petition. It was raised only later, in a letter to the court. The most interested party was not present at the hearing where the issue apparently was decided. Since the trial court's order exceeded the bounds of the notice that the interested parties had received, the court decided the issue without the benefit of briefing or argument. In so acting, the court abused its discretion and exceeded its jurisdiction, ruling on an issue without giving the interested parties due notice.[5]
Having concluded that the trial court erred in ruling on this issue without proper notice, the case could be remanded to the lower court for resolution of the remaining issue, the merits of the abatement order. However, since that issue has been thoroughly briefed and argued before this court, it will be resolved at this time. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 224-225, pp. 4214-4215; see also Estate of Stevens (1945) 27 Cal.2d 108, 118 [162 P.2d 918] [court decided issue for guidance of probate court in the future].)
(6) Appellant and respondents assume that section 752 governs the abatement procedures applicable to this case. That section provides in pertinent part, "Unless a different intention is expressed in the will, abatement takes place in any class only as between legacies of that class...."[6] Although the language of section 752 concerns "legacies," not "devises" such as the real property devise at issue in this case, the statute *712 expresses the "almost universally followed" rule that general gifts abate proportionally before specific gifts. (Bowe-Parker, supra, § 53.4, p. 211; see also Estate of Neistrath, supra, 66 Cal. at pp. 331-332; Estate of Buck (1948) 32 Cal.2d 372, 376 [196 P.2d 769]; Estate of Painter (1907) 150 Cal. 498, 504 [89 P. 98]; Estate of Wever (1936) 12 Cal. App.2d 237, 242 [55 P.2d 279].)
(7) Respondents point to no authority to support the claim that this general rule of law does not apply here. In fact, it has long been the law in this state that "specific legacies or devises [are] not chargeable with the payment of general legacies...." (Estate of Painter, supra, 150 Cal. at p. 504.) A court may order abatement of a specific devise in order to pay debts, expenses of administration or family allowance (see § 750) or to provide for an omitted heir or grandchild (see § 91), but there is no statutory authorization for the abatement of a specific devise in order to satisfy a general legacy.
(8) These general rules governing abatement may be overridden if they conflict with the testator's intent. (See § 101 ["[a] will is to be construed according to the intention of the testator"].) However, the intent to change the order of abatement must be "clearly indicated." (Bowe-Parker, supra, § 53.3, p. 207.) In the absence of a specific indication of a contrary intent, "it is presumed that testator had the general rules of abatement in mind." (Id., at § 53.4, p. 209, fn. omitted.)
The presumption that a specific gift does not abate to pay a general legacy can be defeated only if it "affirmatively and unequivocally appear[s] that such was the testator's intent." (See Estate of Buck, supra, 32 Cal.2d at p. 377, italics added; see Estate of Barnhart (1969) 272 Cal. App.2d 768, 783-784 [77 Cal. Rptr. 753].) Respondents claim that such an intention is expressed in the holographic codicil to decedent's will. That codicil states in full, "In the event there are not sufficient funds in my estate to fully pay out all bequests  I wish all to be fully paid with the exception of the [¶] Seventh  commencing on page 4 and on page 5 and page 6 (the sum of $100,000 for various charities)[.] This $100,000.00 should be reduced by the necessary amount  so that all other bequests can be paid in full." (Italics and parenthetical in original.)
(9) This codicil falls far short of the clear indication of contrary intent required by the statute.[7] First, the codicil is clearly written in the *713 expectation that abatement of the charitable bequests will leave sufficient funds to pay all others. "Ordinarily a testator is deemed to have acted on the belief that his estate would be sufficient to satisfy all legacies in full...." (Estate of Buck, supra, 32 Cal.2d at p. 377.) Where, as here, the testator has made a "specific provision as to the order in which certain legacies shall abate," that provision "does not affect other legacies concerning which no provision has been made." (Bowe-Parker, supra, § 53.2, p. 205, fn. omitted.) Here, the decedent's direction that "all other bequests ... be paid in full" reflects only an intent to abate the charitable bequests first. It indicates nothing about the testator's intent with regard to abatement of the other legacies, since he clearly had not considered the possibility that such abatement might be necessary.
In addition, appellant argues persuasively that if the codicil expresses any intention regarding abatement of the other bequests, it indicates only that the monetary bequests should abate equally. The language of the codicil repeatedly mentions payment of bequests  bequests should be "fully paid," "paid in full," and "funds" are needed "to fully pay out all bequests." It would be anomalous to read the codicil as referring to the devise of real property, since such property cannot be "paid." This language cannot be read as an affirmative and unequivocal indication that the statutory order of abatement by class be defeated.
Respondents argue that these words should not be given a "technical" interpretation, since they were written by the testator, not by an attorney. (See § 106; Estate of Northcutt (1940) 16 Cal.2d 683, 688-689 [107 P.2d 607].) However, the key language of the codicil is not technical. The words "funds," "paid," and "pay out" are all words of general usage with which the testator can be presumed to have been familiar. In general, "[t]he words of a will are to be taken in their ordinary and grammatical sense...." (§ 106.) Surely it strains the imagination to find a clear expression that the devise of real property should abate proportionately in a codicil which repeatedly uses words of payment.
Finally, should there be any ambiguity, appellant cites extrinsic evidence which supports a finding that the decedent did not intend her devise to abate ratably with the general bequests. (See § 105; Estate of *714 Dodge, supra, 6 Cal.3d at p. 318; Estate of Lindner, supra, 85 Cal. App.3d at p. 225 [extrinsic evidence of the circumstances surrounding execution of the will may be considered to ascertain testator's intent where an ambiguity exists].) From the record, it appears that decedent owned a one-half interest in 80 percent of the real property at issue here. The other one-half interest was owned by his deceased first wife, whose will bequeathed her interest to appellant. The remaining 20 percent interest in the property was owned by appellant's father (the brother of decedent's first wife). Thus, decedent's devise to appellant, along with that of his first wife, would give her ownership of 80 percent of the property, with the remaining interest owned by her father. Given this background, it seems likely that the testator expected his gift to lead eventually to appellant's total ownership of the property. If there were an ambiguity in the codicil, it properly would be read as evidencing an intent to follow the statutory abatement procedures, thus protecting the real property from abatement.

III.
The trial court order mandating that the real property devise abate ratably with the general bequests is reversed. The cause is remanded to the trial court for proceedings consistent with the views expressed herein.
Mosk, J., Richardson, J., Newman, J., Kaus, J., Broussard, J., and Reynoso, J., concurred.
NOTES
[1] Jenanyan's first wife, Aileen, died in 1974. Jenanyan left no surviving children. Appellant is the daughter of Aileen's brother.
[2] "Th[e] failure or reduction of legacies because of the insufficiency of testator's assets to satisfy all of the gifts which he has made by will, is called abatement." (6 Page on Wills (Bowe-Parker Revision 1962) Abatement, § 53.1, p. 200, fn. omitted [hereafter Bowe-Parker]; see also Estate of Neistrath (1885) 66 Cal. 330, 331 [5 P. 507].)
[3] Unless otherwise indicated, all statutory references are to the Probate Code.
[4] No transcript of the hearing was prepared. Appellant asserts that the attorneys who were present at the hearing have stated that to the best of their recollection, the real property was not mentioned at all. It is clear from the estate administrator's letter to the trial court after the hearing that no decision regarding the disposition of the real property was reached at the hearing.
[5] Section 1204 permits the trial court to order additional notice when it deems it necessary. (Estate of Bell (1943) 58 Cal. App.2d 333, 337-338 [136 P.2d 804] [additional notice is within the discretion of the trial court].) Here, rather than ordering preparation of a new petition, the court could have ordered additional notice expressly informing the parties that the issue of abatement of the real property devise would be decided.
[6] Section 752 reads in full, "Unless a different intention is expressed in the will, abatement takes place in any class only as between legacies of that class, and legacies to a spouse or to kindred shall abate only after abatement of legacies to persons not related to the testator."

No appeal has been taken from the trial court order that the statutory kindred preference did not apply to the abatement under this will.
[7] Although the trial court apparently reached a different conclusion, that conclusion is not binding on appeal. "[I]t is only when the issue turns upon the credibility of extrinsic evidence, or requires resolution of a conflict in that evidence, that the trial court determination is binding.... Since the record in the present case discloses no conflict in the extrinsic evidence, and no issues of credibility, [this court must] arrive at an independent interpretation of the will." (Estate of Dodge (1971) 6 Cal.3d 311, 318 [98 Cal. Rptr. 801, 491 P.2d 385]; see also Estate of Lindner (1978) 85 Cal. App.3d 219, 225 [149 Cal. Rptr. 331].)